UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
                                                :
                                                :
ALFIE SHANNBAY DURHAM,                          :
                                                :
                Plaintiff,                      :   No. 14-cv-607 (TPG)
                                                :
        v.                                      :   ECF CASE
                                                :
SUNY ROCKLAND COMMUNITY                         :   **OPINION**
COLLEGE, SUZANNE D. PHILLIPS,                   :
JONATHAN BARNWELL,                              :
                                                :
                Defendants.                     :
                                                :
------------------------------------------------x

      Before the court is defendants' fully briefed motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The motion stems from pro se plaintiff Alfie Shannbay Durham's largely confusing complaint filed in January 2014 against SUNY Rockland Community College ("RCC"), Dr. Suzanne Phillips, Dean of Student Personnel Services at RCC, and Jonathan Barnwell, an employee of RCC's Office of Student Affairs (together, "defendants").  The complaint itself is four pages, but is accompanied by exhibits totaling twenty-one pages.

      Plaintiff seeks damages in the amount of $7 million because he believes that defendants caused him emotional distress, destroyed his college career, caused delay in receiving his educational degree, and caused him loss of both present income and future income.  The causes of action arise out of plaintiff's

2006 suspension from RCC and his 2013 transcript request from RCC, which apparently went unfulfilled.

Plaintiff's complaint does not allege any specific legal claim against defendants other than for allegedly denying plaintiff access to his RCC transcript. See Compl. 1–4, ECF. No. 2 (hereinafter, Compl.). However, plaintiff attached to his complaint a letter he previously sent to RCC which purports to make numerous claims against RCC. See Compl. Ex. 2. The letter contains a somewhat better rendition of plaintiff's account and sheds more light on plaintiff's legal claims against defendants. Specifically, plaintiff makes the following legal claims against defendants in the exhibits attached to the complaint:

### Constitutional Claim

1. Violation of free speech and expression rights with respect to Dr. Phillips' 2006 reaction to plaintiff's presentation of plaintiff's offensive album title, Compl. Ex. 2, at 6;

### State Claims

1. Negligence by RCC public safety officers in 2005 for not processing plaintiff's claim of a possible firearm held on its campus, Compl. Ex. 2, at 6;
2. Negligence by RCC public safety officers in 2005 for not processing a claim of possible stalking, id.;
3. Negligence in 2013 for not releasing plaintiff's transcript, id.;
4. Defamation in 2006, id. at 7;
5. Discrimination following the 2006 presentation of a "work of art," i.e., the CD containing an offensive song title, id.; and
6. Request for relief under N.Y. C.P.L.R. 7801 et seq. based on plaintiff's 2006 suspension from RCC, id.

Defendants filed their answer following the filing of the complaint. Answer, ECF No. 10 (hereinafter, Answer). The answer includes numerous affirmative

2

defenses, including statute of limitations and improper service of process. Answer ¶¶ 8–9. Defendants later moved for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and maintained that defendants Barnwell and Phillips were improperly served. ECF Nos. 16–17. Plaintiff opposed defendants' motion for judgment on the pleadings, ECF Nos. 18–19, and defendants replied in further support of their motion, ECF No. 20.

We examine each of plaintiff's claims in turn in the Opinion that follows. For the reasons set forth herein, defendants' motion for judgment on the pleadings should be granted in full.

## The Complaint

The following facts are drawn from the complaint, unless otherwise specified. In fall 2005, plaintiff had an altercation with another student that plaintiff suspected was carrying a firearm. Compl. Ex. 2, at 4. In January 2006, plaintiff was called to meet with Dr. Phillips, RCC's Dean of Students, to discuss the altercation and an incident report that was filed against plaintiff. Id. There, plaintiff attempted to advocate for himself by explaining his positive qualities to Dr. Phillips. Id. In so doing, plaintiff, who identifies himself as a recording artist, showed Dr. Phillips a CD recording he had created. Id. The CD was entitled "Hangman Cock Block," which Dr. Phillips found offensive. Defs.' Mem. of L. in Support of J. on Pleadings 2, ECF No. 17 (hereinafter, Defs.' Mem.). Dr. Phillips called security and had plaintiff escorted from her office. Compl. Ex. 2, at 4.

Plaintiff was informed that, because of his 2005 altercation and his behavior during the meeting with Dr. Phillips, plaintiff had violated the RCC Code

3

of Conduct. Id. He was offered community service as punishment. Id. Defendants aver that plaintiff rejected the offer of community service and he was instead suspended for two semesters. Defs.' Mem. 2. Plaintiff did not appeal the suspension within the one-year time frame allotted for disciplinary appeals at RCC, nor did plaintiff return to RCC at all. Id. However, plaintiff strongly contests his responsibility for the 2005 altercation and believes he was wrongly subjected to disciplinary action in 2006. Compl. Ex. 2, at 4.

Seven years later, in 2013, plaintiff attempted by fax to obtain his academic transcript documenting his studies at RCC. Compl. 2. Plaintiff followed up on this transcript request and spoke with Mr. Barnwell, an employee in RCC's Office of Judicial Affairs. Mr. Barnwell told plaintiff that the transcript could not be released because plaintiff's student account had a "hold" on it. Id. at 2–3. There was an apparent exchange of letters between Mr. Barnwell and plaintiff, see id. at 2, and Mr. Barnwell left a voicemail message for plaintiff that caused plaintiff to feel that Mr. Barnwell did not take the transcript request seriously. Id. Plaintiff claims that RCC never sent his college transcript. Compl. Ex. 2, at 2. Defendants, however, claim that they fulfilled the transcript order within a few weeks of the request. Defs.' Mem. 4.

Plaintiff believes that his wrongful suspension from RCC in 2006 and the withholding of his transcript in 2013 signify a conspiracy by the defendants to cause plaintiff harm. Specifically, plaintiff claims that the events caused him myriad personal, professional, and financial injuries for which he deserves recompense on the order of $7 million.

4

## Defendants' Motion for Judgment on the Pleadings

A. *Standard of Review*

The standard to be applied on a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as that for a Rule 12(b)(6) motion to dismiss. See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). In reviewing such a motion, courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." Rosner v. Bank of China, 349 F. App'x 637, 638 (2d Cir. 2009) (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993)).

Where a pro se litigant is involved in a case, "the court has an obligation to read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments they suggest." See Thomas v. Keane, No. 99-cv-4302, 2001 U.S. Dist. LEXIS 4873, at *8 (S.D.N.Y. Apr. 18, 2001) (citation omitted); see also Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). "[B]ald assertions," however, cannot overcome a motion for summary judgment, even if the opposing party is pro se. See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1995); Vondette v. McDonald, No. 00-cv-6874, 2001 U.S. Dist. LEXIS 19953, at *8 (S.D.N.Y. Dec. 5, 2001).

B. *Service of Process*

Defendants Phillips and Barnwell have asserted in their answer, and repeat in their motion for judgment on the pleadings, that they were insufficiently

5

served with the summons and complaint. Defs.'s Mem. 11–13. We deal with the improper service issue as an initial matter.

a. Discussion

Federal Rule of Civil Procedure 4(m) governs the dismissal of actions for untimely service of process. Rule 4(m) states:

> [i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action without prejudice . . . or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Thus, in reviewing a Fed. R. Civ. P. 12 motion that includes an objection based on insufficient service of process, the court must determine whether the failure to properly effect service was excused due to good cause and, if not, whether the cause of action should be dismissed.

Generally, a pro se litigant proceeding in forma pauperis is entitled to rely upon the U.S. Marshals to effect service. See Fed. R. Civ. P. 4(c)(3); Romandette v. Weetabix Co., 807 F.2d 309, 311 (2d Cir. 1986). The Second Circuit has stated that a plaintiff's in forma pauperis status "shift[s] the responsibility for serving the complaint from [the plaintiff] to the court." Wright v. Lewis, 76 F.3d 57, 59 (2d Cir. 1996). At the same time, a plaintiff's in forma pauperis status does not absolve him of all responsibility; "[i]f a plaintiff proceeding [in forma pauperis] chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish this by the Rule 4(m) or court-ordered deadline, []he must advise the district court that []he is relying on the

6

Marshals to effect service and request a further extension of time for them to do so." Meilleur v. Strong, 682 F.3d 56, 61 (2d Cir. 2012). And although the court has "an obligation . . . to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . such protection 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Sellers v. Royal Bank of Canada, No. 12-cv-1577, 2013 WL 1222668, at *1 (S.D.N.Y. March 21, 2013) (citing and quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

Where a pro se litigant is proceeding in forma pauperis and the defendant was not properly served, the court typically considers whether defendant had actual notice of the lawsuit and whether defendant was prejudiced by the U.S. Marshal's failure to effect proper service. See Morales v. New York State Dep't of Labor Div. of Employee Servs., No. 06-cv-899, 2007 WL 2874570, at *5 (N.D.N.Y. Sept. 27, 2007) (holding that "good cause" existed for plaintiff's failure to properly effect service where, inter alia, defendant "had actual notice of [the] complaint well within the 120 day service period, and therefore was not prejudiced by the failure to effect proper service").

b. Application

Defendants point out numerous defects in the U.S. Marshal's Service of the summons and complaint on Dr. Phillips and Mr. Barnwell and ask that the court dismiss plaintiff's claims for improper service of process. However, Dr. Phillips and Mr. Barnwell have not claimed that they lacked actual notice of the lawsuit or that they were prejudiced by the U.S. Marshal's failure to effect

proper service. Having considered the competing arguments, the court declines to dismiss plaintiff's claims against Dr. Phillips and Mr. Barnwell for lack of service.

C. *Constitutional Claim*

Plaintiff alleges that the defendants violated his First Amendment right to free speech by "exercis[ing] an atmosphere of . . . anti-freedom of speech and expression" when Dr. Phillips ejected plaintiff from her office upon seeing plaintiff's sexually offensive music CD title. See Compl. Ex. 2, at 6.

Defendants assume, as does the court, that plaintiff intended to bring his constitutional claims under 42 U.S.C. § 1983 (2012). Section 1983 states, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983. Section 1983 provides for a cause of action for constitutional violations. Suee Sank v. City Univ. of N.Y., No. 10-cv-4975, 2011 WL 5120668, at *6 (S.D.N.Y. Oct. 28, 2011) ("Because [] Section 1983[] provides a remedy for alleged constitutional violations, [plaintiff] cannot base claims directly on the First, Fourth and Fourteenth Amendments."); see also Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 136 (2d Cir. 1999) ("Section 1983 permits an individual

8

deprived of a federal right by a person acting under color of state law to seek compensation in federal court.").

In New York, there is a three-year statute of limitations for claims under § 1983. See Wilson v. Garcia, 471 U.S. 261, 276–80 (1985); Owens v. Okure, 488 U.S. 235, 237–39 (1989); N.Y. Civ. Prac. L. & R. § 214(5) (McKinney 2014). At any time before the summary judgment stage, and "in the statute of limitations context[,] . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time." Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999). State tolling rules apply to determine when a statute of limitations begins to accrue. See Bd. of Regents of Univ. of N.Y. v. Tomanio, 446 U.S. 478, 486 (1980). Special rules apply to violations that are deemed to be "continuous," where a plaintiff suffers a continuing harm. A continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act. See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997). Rather, in the case of an alleged constitutional violation, the statute of limitations is tolled until the last act in furtherance of the violation." See Washington v. Cnty. of Rockland, 373 F.3d 310, 317 (2d Cir. 2004).

As a threshold matter, defendants argue that plaintiff's claims should be dismissed under the three-year statute of limitations applicable to § 1983 claims. Defs.' Mem. 5–6. We agree. Plaintiff filed his complaint on January 27, 2014, and the alleged constitutional violation dates back to 2006. See Compl. Ex 2, at 6–7. We therefore hold that the last act in furtherance of defendants' alleged

constitutional deprivations occurred in 2006, seven years before the filing of the complaint. Plaintiff's attempt to access his academic transcript in 2013 was not an additional act in furtherance such that plaintiff's constitutional claims can be called "continuing." The 2006 and 2013 incidents occurred too far apart, see Warren v. Altieri, 59 F. App'x 426, 427 (2d Cir. 2003), and plaintiff's allegations about a conspiracy linking his 2006 suspension and the 2013 transcript incident are conclusory at best.

For the reasons set forth above, we hold that plaintiff's constitutional claim have long expired. And while there appear to be numerous other procedural and substantive defects in plaintiff's constitutional claim, we decline to address those deficiencies and grant summary judgment on statute of limitations grounds alone.

D. *State Law Claims*

Plaintiff makes numerous state-law assertions that, for the present purposes, may be broadly categorized into three areas: (1) tort claims; (2) a discrimination claim; and (3) an application for administrative review of RCC's suspension of plaintiff.

Defendants argue that the court need not reach the merits of plaintiff's claims because plaintiff failed to state causes of action by failing to file a notice of claim, or because plaintiff's claims are time-barred. We examine these arguments as applied to each category of plaintiff's state-law claims.

1. Tort Claims

Plaintiff's alleged tort claims include: negligence by the public safety officers in 2005 for not processing the claim of a possible firearm held on its campus, Compl. Ex. 2, at 6; negligence by the public safety officers in 2005 for not processing a claim of possible stalking, id.; defamation based on events that occurred in 2006, id. at 7; and negligence in 2013 for not releasing his academic transcript in 2013,[1] id. at 6. We need not reach the merits of these claims because each fails on procedural grounds.

a. Discussion

A suit against a municipality or a municipal actor is commenced by filing notice of claim upon the defendant or the sponsoring county. See N.Y. Educ. Law 6308(3)(6) (McKinney 2013). State notice-of-claim statutes apply to state-law claims brought in federal court. See Felder v. Casey, 487 U.S. 131, 151 (1988) ("federal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state] notice-of-claim provision"); Fincher v. Cnty. of Westchester, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) (noting that New York's 90-day notice-of-claim requirement applies to state tort claims brought as pendent claims in a federal action). The notice of claim must set forth, inter alia,

---

[1] Though plaintiff groups with this negligence claim the allegation that defendants "exercised capricious, illogical and malicious actions . . . and did not honor its own end of suspension [sic] statement," we deal with that issue as a separate cause of action in Part D.3, infra.

11

the nature of the claim, and must be filed within ninety days of when the claim arises. See N.Y. Gen. Mun. Law § 50-e (McKinney 2013).

New York law requires a plaintiff to plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. See N.Y. Gen. Mun. Law § 50-e. Notice of claim requirements "are construed strictly by New York state courts." AT&T v. NYC Dep't of Human Res., 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (citing Murray v. LeRoy Cent. Sch. Dist., 67 N.Y.2d 775, 775, 500 N.Y.S.2d 643, 643, 491 N.E.2d 1100, 1100 (1986); Chinatown Apartments, Inc. v. NYC Transit Auth., 100 A.D.2d 824, 825, 474 N.Y.S.2d 763, 765 (1st Dep't 1984)). Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action. See, e.g., Brown v. Metro. Transport. Auth., 717 F. Supp. 257, 259 (S.D.N.Y. 1989). In sum, under New York law, if § 50-e has not been satisfied (and the defendant has not waived its right to a notice of claim), no damages are available.

Even after a notice of claim has been filed and an action commenced, the claim must fall within the applicable statute of limitations. Negligence claims against a municipal actor carry with them a three-year statute of limitations. See N.Y. C.P.L.R. 214(5). Defamation claims against a municipal actor carry with them a statute of limitations of one year. Id. at 215(3).

b. Application

Defendants point out that the complaint fails to allege that plaintiff ever served a notice of claim on Rockland County. Plaintiff has not disputed this, and we hold that this defect is fatal. Additionally, the respective statutes of limitation ran well before this case was filed or plaintiff sent the letter attached in his complaint. On these procedural grounds alone, plaintiff's tort claims must fail.

2. Discrimination Claim

Plaintiff also believes that defendants discriminated against his beliefs by "eject[ing] him from [the RCC campus]" after he presented RCC officials with a copy of a CD cover he created, which contained an offensive album name. See Compl. Ex. 2, at 7. Defendants analyze this discrimination claim in terms of 20 U.S.C. § 1011 (2012), but that statute does not create a private right of action. See Bowers v. Pennsylvania Higher Educ. Assistance Agency, No. 10-cv-8675, 2011 WL 3585986, at *2 (S.D.N.Y. July 29, 2011); Josev v. Sallie Mae. Inc., No. 09-cv-4403, 2009 WL 2518643, at *5 (S.D.N.Y. Aug. 17, 2009); Maxwell v. N.Y. Univ., No. 08-cv-3583, 2009 WL 1576295, at *7 (S.D.N.Y. June 1, 2009). Accordingly, we construe this claim under New York civil rights law, whose statutory framework does provide for a private right of action, and to which plaintiff also cites.

a. Discussion

New York State law provides, in relevant part, that "[n]o person shall, because of . . . creed . . . be subjected to any discrimination in his or her civil

13

rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state." N.Y. Civil Rights Law § 40-c (McKinney 2003). In the first instance, the proper commencement of a claim under § 40-c requires the proper filing of a notice of claim. See, e.g., Pastolrello v. City of New York, 2001 WL 1543808, at *9 (S.D.N.Y. 2001). The statute of limitations for claims brought under § 40-c is three years from the date of injury caused by discrimination. See Butler v. New York Health & Racquet Club, 768 F. Supp. 2d 516, 536 (S.D.N.Y. 2011).

### b. Application

Again, the complaint does not allege that plaintiff ever served a notice of claim on Rockland County or the parties with regard to the § 40-c claim. In addition, plaintiff filed the complaint well after the three year limitations period, as the claimed injury occurred at the January 2006 meeting with Dr. Phillips. The alleged discrimination is not considered "continuing" simply because plaintiff still feels the effects of it. For these reasons, both the notice of claim and statute of limitations defects are fatal to plaintiff's claim under § 40-c.

### 3. Article 78 Petition

Finally, plaintiff seeks relief from defendants' "capricious, illogical and malicious actions" when they subjected plaintiff to a two-semester suspension

14

in 2006. Compl. Ex. 2, at 6.[2] While plaintiff's complaint does not state a precise cause of action on this score, we interpret the complaint to mean that he seeks review of his suspension from RCC in 2006. As defendants correctly assumed, such review is analyzed under the framework of N.Y. C.P.L.R. 7801 et seq.

   a. Discussion

Student disciplinary proceedings in public schools are considered administrative proceedings. See, e.g., Mirenberg v. Lynbrook Union Free Sch. Dist. Bd. of Educ., 63 A.D.3d 943, 943, 881 N.Y.S.2d 159, 159 (2009). The proper procedural vehicle for challenging an administrative determination is a proceeding pursuant to Article 78. A claim will not be ripe for Article 78 adjudication until the decision is "final and binding upon the petitioner." Id. at 217(1). There are "two requirements for fixing the time when agency action is 'final and binding upon the petitioner.' First, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and, second, the injury inflicted may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party." See Best Payphones, Inc. v. Dep't of Information Tech. and Telecomm. of NYC, 5 N.Y.3d 30, 34, 799 N.Y.S.2d 182, 184, 832 N.E.2d 38, 40 (2005).

---

[2] Though plaintiff lumps with this claim the allegation that defendants "acted negligent in the non-release of the requested official transcript," we considered that issue as a distinct negligence claim in Part D.1, supra.

15

The prerequisite that a decision be final before it can be challenged is closely related to the requirement that a prospective challenger of agency action must exhaust all administrative remedies, though the requirements are distinct. See N.Y. C.P.L.R. 7801(1). "The focus of the exhaustion requirement is not on the challenged action itself, but on whether administrative procedures are available to review that action and whether those procedures have been exhausted." Walton v. New York State Dep't of Corr. Servs., 8 N.Y.3d 186, 195, 831 N.Y.S.2d 749, 754, 863 N.E.2d 1001, 1006 (2007) (internal quotation marks and citation omitted). If the administrative agency's rules provide for an appeal procedure that was not invoked or completed, any subsequent Article 78 proceeding will be subject to dismissal for failure to exhaust administrative remedies. See, e.g., Sylcox v. Chassin, 227 A.D.2d 834, 642 N.Y.S.2d 411 (3d Dep't 1996).

There is a four-month statute of limitations for Article 78 proceedings, see N.Y. C.P.L.R. 217, 7801 et seq., and it begins to run when a final determination has been reached. Id. at 7801. Even when an Article 78 hearing is properly before a court, the court does not interfere with the powers of administrative agencies when they are exercised properly, and the court's scope of review is limited in nature. See Slesinger v. Dep't of Hous. Pres. & Dev. of City of New York, 39 A.D.3d 246, 246, 834 N.Y.S.2d 107, 108 (2007).

b. Application

Here, defendants aver that the four-month statute of limitations on plaintiff's Article 78 request has expired. While this may be true, the court

16

cannot make that determination based on the record before it. The letter exhibit attached to plaintiff's complaint which notifies plaintiff of the "proposed resolution" that he be suspended for two semesters does not make clear that the disciplinary decision was final. <u>See</u> Compl. Ex. 1, at 2. Indeed, nothing before the court indicates that the disciplinary decision ever became final.

With no clear final disciplinary decision, it appears that plaintiff's Article 78 request is unripe. But even if the decision in fact became final at some point between 2006 and the filing of the instant action, there is no indication that plaintiff appealed his suspension. Exhibit 1 of plaintiff's complaint, which is the letter from Dr. Phillips notifying plaintiff of RCC's decision to suspend him, contains within it clear notice to plaintiff that if he did not "agree with the proposed resolution and disciplinary action[, he] may request in writing a hearing before a hearing committee." Compl. Ex. 1, at 2. Even if RCC's disciplinary decision were final, plaintiff has not exhausted the administrative remedies available to him and his request for Article 78 relief does not pass muster.

## Conclusion

For the foregoing reasons, defendants' motion for judgment on the pleadings is granted in its entirety.

SO ORDERED.

Dated: New York, New York
January 12, 2016

_____
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/12/2016

17